People v. Michael Burgund and we have Mr. Daly, we have Mr. Dawson. What is his name? Curtis Dawson.  Dawson. Dawson. Is that one right? And Mr. Dawson, you're here for the appellant and you may proceed when you're prepared to. Thank you, Your Honor. Please support Mr. Daly. After five days of interrogation by his wife and his mother-in-law, Michael Burgund took an unusual step when he walked into the Alton Police Department and confessed to molesting his two daughters. He later recanted. During closing argument, the prosecutor asked, a fact that I just want you all to ask yourself, who, who would ever admit to something like that if it weren't the truth? And think about the statements that he made and why he would make them. Why would he say anything like this unless it's the absolute truth? And finally, he confessed not just to Mary and Melissa, but to Pastor Mark, to Officer Beaver, to Detective O'Neill. Who does this unless they're guilty? That was one great question asked three times. The defense had an answer. The defense had an explanation, but the jury never got to hear it. The defense had four independent witnesses that were barred by the evidentiary rulings of the trial court. A defendant has a constitutional right to present a defense. Criminal defendants are guaranteed a meaningful opportunity to present a complete defense. This constitutional right to present a defense comes from the Confrontation Clause of the United States Constitution that states, the accused shall enjoy the right to have a compulsory process for obtaining witnesses in his favor. Illinois Article I, Section 8 of its Constitution has similar language. As noted by the courts, few rights are more fundamental than the right of an accused to present witnesses on his own behalf in his defense, and that the right is an essential attribute of the adversary system itself. The right to compel the presence of witnesses in the courtroom cannot protect the integrity of the adversary process if it doesn't include the right to put those witnesses on the stand. The defense in this case had the theory that Michael Bergen had psychological difficulties that made him highly suggestible and easily led, especially in matters that would have religious or sexual overtones. That the defendant was subject to years of emotional, psychological, and physical abuse at the hands of his wife. As his marriage began to fall apart, his mother-in-law, Mary Buttrey, based upon what I would call her odd sense of suspicion, began talking to a three-year-old about inappropriate touching, despite the fact that no credible outcry had been made. In preying upon the defendant's psychological difficulties, these two women, then over the course of five days, and by using a good cop, bad cop routine, coerced him into believing he committed these sexual acts against his daughters and convinced him to walk into a police station and confess to a police officer. Mr. Dawson, I was very interested in this issue of discernment. Am I pronouncing that correct? I believe so, Your Honor. So, the whole proposition behind this abuse that you're talking about was this ability of the wife to see evil in people. Is that true? Am I catching that right? It is certainly something that we believe played into Michael Bergin's psychological difficulties that allowed him to be misled, that allowed him to be suggestible, that allowed these two women to overcome his will because of his very deep religious beliefs. But there's nothing, or is there anything, in the law that recognizes this issue? Like, for example, years ago, nobody recognized battered wife syndrome as an emotional impact such that, you know, a defense could be made. And over the years, battered wife syndrome is now appreciated. Is there anything out there about this kind of psychological abuse? Your Honor, there isn't anything that I found on it. How about Dr. Cuneo? Did he give any credibility or stamp of approval to this? Because we all recognize him as an expert in this area of psychology. Certainly, Your Honor. And all we have before us is Dr. Cuneo's letter that was submitted as an offer of proof. And in that letter, he stated that Michael Bergin's psychological difficulties would make him highly suggestible and easily led, especially in matters that would have religious or sexual overtones. His thinking is very obsessive and rigid. But it doesn't say anything about this case. Dr. Cuneo was very careful in that letter. It doesn't say anything about this case and what was allegedly implanted in his mind about these allegations, this whole issue of discernment. I mean, you could have had a fry hearing on it. Or does that only apply criminally? I guess you could have had a hearing on the reliability of this or unreliability to try to prove that it was relevant. Your Honor, Dr. Cuneo was going to be called to testify to this defendant's mental state, his ability to be misled and coerced. He wasn't being called to testify that this is what actually happened and that his will was overcome. He was being called to testify to answer the question the State asked, who would do this? But then how is that relevant? Because lots of people are easily misled, so how is it relevant? Well, I'm sorry to interrupt. Go ahead. But let me just, you know, the jury instruction, paraphrasing that the jury is always given when there's a confession introduced, says there's evidence presented in this case that the defendant made a statement. It's up to you to determine whether he made the statement and how much weight to give that statement. And in doing so, you should consider all the circumstances under which the statement was made. Words to that effect, you know. So doesn't this testimony from the psychologist go to the circumstances under which he confessed when he went and knocked on the door at the Alton Police Department and turned himself in? It actually does, Your Honor. There are two reasons why extrajudicial confessions are historically mistrusted. One of which is that confessions are unreliable and coerce, and that for various psychological reasons, persons confess to crimes that have never occurred before, which they're not legally responsible. And Michael Bergen's confession implicates both of those reasons under the theory of the defense, that he had some psychological problems and that his will was overcome by his wife. And I think that it's important to look at Dr. Cuneo as he's offering evidence of the character trait of the accused. He's offering evidence that other people may not be able to understand. Although I was really surprised at how vague of a report this was. He says he administered an MMPI, too, but he doesn't attach it. He basically says that due to his, what did he say, his psychological background or something, he doesn't diagnose any kind of illness or disability that would make him more likely perhaps having a low IQ or depression or bipolar. I mean, he doesn't say anything about what that psychological makeup is that would allow him to be more suggestible. Well, Your Honor, and I understand that. And the State touches upon that in their brief that there was no diagnosis given. And I suggest that that goes to the weight of the evidence, not the admissibility. And as Justice Case has noted, at one point in time, people didn't believe the battle of Weiss syndrome. Now it's accepted that that's real. These are character traits. Rule 404 allows a character trait to come in. It doesn't say that it has to be a diagnosis. It doesn't have to be a medical diagnosis or a psychological diagnosis. It's a character trait. And the State or the defense has somebody who would come and say, and this is why it's relevant, yes, there are people. This might be easy for somebody to understand that there are people who are easily misled or who are able to be coerced. But Michael Bergen exhibits some of the character traits of the people that do. He is corroboration for the defense. He's an independent witness. He gives, ultimately, credibility to really kind of a fantastic story that's being told. The State talks about bolstering evidence, but it's corroborative evidence. And that's what he was important for, to explain, to answer that question. Why would somebody do this? I believe that since the briefing in this case, our Supreme Court has made a pronouncement in a criminal case about the reliability or unreliability of confessions. It's actually eyewitness testimony, I think. Yeah. I don't have that citation at hand, but I don't think you cited that case. I think this, correct me if I'm wrong, it may have occurred after this briefing. I think it did, but it was eyewitness testimony. They allowed expert testimony on eyewitness testimony. But not on this issue. Right. Okay. I'm sorry, we're having a discussion. We'll have the opportunity for rebuttal. Mr. Dawson, thank you. Thank you. Mr. Daly. Thank you, Your Honor. And please, the Court, Counsel. I want to just first settle the comments by Justice Katz, and then I'll go to Justice Stewart. As I understand it, the theory behind it is really that even if the sermon is utter bunkum, it's something back to this particular defendant that wasn't bunkum. And so it's like saying, if you don't confess, I'm going to poke my voodoo doll until you get a stomachache, so you better go do so. And if you're so imbued with this belief of voodoo science, that that somehow weighs upon your ability to voluntarily confess to something, that's a fact to consider. So, you know, I think it's sort of where the direction was trying to go with this. It's not really saying there is or isn't such a thing as discernment, but he believed it to be so, and that's what motivated him to testify. Try to tie into the later recantment, I suppose. But that leads me, then, to what Justice Stewart talked about with regards to the jury instruction. And I think there needs to be a level of caution here that the issue is not so much a jury being given the opportunity to take into consideration circumstances attendant to giving a statement. It's that what is the jury being told, and who is making those statements to the jury in order to make those determinations. And that's what it really reduces down to, and that was really the premise of the state's motion in limiting below. They want to use an expert witness. They want to use a clinical psychologist who is going to come in, and he is going to presumably speak in the manner in which the offer of proof was presented in the case. But he's going to then await to this particular, you know, thing, which is not expert testimony because it's not related to any sort of clinical diagnosis of some sort of disability. And I think we know one thing about psychologists and psychiatrists, they're masters of exactitude. And so when he says it would be, in my opinion, Michael Bergen's psychological difficulties, that fairly left off the page on me because there's no DSM, you know, kind of diagnosis going on here. You look at other cases, they have a borderline personality disorder, they have something to this or that. I have a psychological difficulty with the neck brace. It makes me feel claustrophobic every day. That doesn't make me have a psychological disorder. And it's really what the work case is. Is there anything that says there has to be a diagnosed psychological disorder for a psychologist to be allowed to get on the stand and testify to what he found? The people are the work cases. Isn't the result here, and kind of focusing on what the issue is that's raised by the defendant, that he was not able to present a defense. The result of this series of trial court rulings were he got to get on the stand and tell this totally fantastic sounding story, okay, and he didn't get to call any witnesses to corroborate that there was any truth to it. Even when he's got a psychologist saying he was susceptible to this kind of thing, even when he's got witnesses who, you know, could testify to the mother-in-law doing similar type of things to other people and so forth, and so, you know, he does, doesn't he have a right to present some evidence to corroborate what his defense is? And his defense is it was a false confession. He has an absolute right to corroborate that, Judge. And nothing that happens in these court rulings has diminished that right to corroborate. The point of the matter is that that corroboration has to be in the form of proper evidence. In this case, he wants to put on expert witness. We know what the law says. Expert testimony is only allowed in those instances to assist the jury in making determinations of something that are beyond the ken of the ordinary citizens who make on their own. This defendant could have put on 100 witnesses who said, Man, he talks to me all the time about this sermon, and he's just so freaked out by it. Any lay witness can come and make these particular, they must put on psychologist. Let's go to the question the prosecutor asked in the closing argument. Okay. Who would confess to this if it wasn't true? That's the question he was trying to answer. And isn't that relevant to whether or not his confession should be believed by the jury? But you're conflating, I think, the concept of whether expert testimony is permitted in certain circumstances. Well, is that something the general public can understand? Why someone would go in and give a false confession? Absolutely. And it's no different from the Wood case. For the Wood case, where the court basically says that, well, you know, he's someone who's easily coerced, which is really the same thing as what we have here in the Wood case. So we're going to tell the jury you should consider all the circumstances under which the confession is given, but we're not going to give them all those circumstances. We're not going to give them those circumstances in which it's not permitted. By a psychologist. Correct, by a psychologist. So you're not going to give them a diagnosis that would support his being susceptible based on some type of psychological defect or illness. Yes. Don't underestimate, and I don't think I need to tell the business court to underestimate the impact that an expert witness would have on a particular case. So if that witness testimony isn't appropriate at the outset, then it's the state being denied the opportunity to really have a fair hearing here. When that witness is blending an imprimatur of diagnosis, a diagnostic kind of result, to something that any layperson could equally come to a conclusion and a juror could come to a conclusion on. But you're assuming the state wouldn't have the opportunity to rebut that. This was all pre-trial. So if the state knew, for example, Junio was going to testify, the state could call their own witness. Well, then we either want a bailout of experts over a non-diagnosis. I mean, I don't think anyone wants to give them a bailout. No, but I'm saying if you certainly – your argument seems to foreclose the fact that you would have been allowed to call anybody, and certainly you would have because this was pre-trial. I don't know how I can emphasize this any more strongly. My argument is not to call nobody. You just can't call Junio and have him testify because he hasn't diagnosed anything. He's just given a lay witness opinion. I talked to him. I talked to his family. I think the guy's susceptible to – well, I mean, you know, Joe Schmoe of the colleges would tell you the same thing. Well, is being susceptible to that kind of influence – is there a category under DSM-IV that meets that? I don't know. It's not our job to come up with this. It appears to me what was going on here was a religious belief that these people all shared. And, I mean, I don't think any of us are privy to what that was. And I don't know that necessarily the psychologists could even discern that that was anything beyond some type of religious belief that they all bought into. And I'm not saying that it wasn't valid. And the other thing, from his impression in speaking, and he mentions his history. So, I mean, he's talking about basically, if we're going to give that the literal interpretation, then he's looking at essentially information that he's gleaning from him perhaps in a relationship with other people rather than some sort of clinical diagnosis that would lead to him being susceptible to this type of interrogation technique. I mean, I've said it a thousand times. I'll say it again. It's never been his position of being, nor has it ever been his position of state. Well, the defendant can put on his own testimony. He can put on the testimony of anybody he wants to try to establish this particular modality of, I'm scared of someone who has this discernment. But it has to be done through proper means. And the law has been abundantly clear that an expert can't testify to something that Joe Schmoe, a woman who went to college with him, can testify about. It's not for a protected testimony. Because now the jury is hearing it not from Joe Schmoe. We're seeing it with a guy with a doctor in front of him. And that's a damning thing. That was the same. Those are the exact same arguments that have been used all along on, not false confessions, but we talked a minute ago about the recent Supreme Court ruling. Eyewitness testimony. Eyewitness testimony. Same things barred for years. Up until a month or two ago. That exact argument. But that's based on memory and, I mean, there is a psychological basis. I can't speak to that case right now. To making those rulings. Well, I don't think the general rule regards to the invisibility of expert testimonies changed at all. At any point. No, we're talking about a recognition. Well, right. Yeah, it's true. I mean, these have a more advanced sense, I suppose. You've talked about the psychologist a lot, but how about these other three? Okay. Well, I think that what we have here is we have kind of David McKee. And the offer of proof here would have been that McKee, who had been married to the mother-in-law a number of years ago, had made false accusations of abuse against McKee. And I think related to that, that the mother of the victim had accused McKee of committing a sexual assault against her, which she apparently denied had happened in a divorce deposition or something like that. And defendants prepared to put on three witnesses who would essentially rebut whether she had said that she had been sexually molested by her father or by Dana McKee. I don't know the nature of the relationship. But essentially what it came down to is the courts felt that all of this, which is apparently being done, can really quickly finish this case. Were you going to deny that too? You're the presider. All right. I've established that it was a collateral matter that was far attenuated from the evidence in this case. All right. Thank you. Thank you, Mr. Daly. Mr. Darrow, you have Dawson. You have rebuttal. Apparently you do. Thank you. Mr. Daly makes much of the fact that, well, a psychologist coming in and testifying could be prejudicial to the state. Well, what about the fact that the state prevents a psychologist from testifying and then comments three times about the absence of the evidence? That's really the crux of it. He stated that, well, he could bring in 20 people that could testify that he's afraid of discernment. Your Honor, he tried to bring in four people, and they were all denied by the trial court. The defense was gutted. Maybe they should have brought in a minister or someone who is affiliated with this sect or whatever, a religion that could establish there is such a belief that they buy into of discernment. Well, Your Honor, there was testimony that discernment is one of the teachings of the church that Melissa Bergen and Mary Butchery went to, and I think Pastor Mark Church testified about it. But the focus of Van Cunio's was going to be this gentleman's mental state. It's going to be his ability to be coerced. The state, by the way, relies upon people versus wood for the proposition that this evidence is improper. And I have to vehemently disagree. In wood, the defense, they hired experts to testify at the defendant's bond hearing. And when it came time to trial, the defense attorney wanted to use the expert. And if you read wood, the trial court asked for pages trying to nail down what is he going to testify to, what is he going to testify to. And the defense attorney is vague and evasive. And on appeal for the first time, they say, well, he was going to testify regarding a claim of coercion. And they said, no, you waived that. You did not bring that up below. And then they go on and in dicta state that, well, we find it undisclosive anyway, citing Gilliam. But Gilliam does not stand for the proposition that it's not allowed. And, in fact, in Gilliam, it was allowed. The expert was allowed to testify regarding the guy's ability to, regarding susceptibility to coercion, just not to the ultimate fact of whether or not it was a false confession based upon it. In your offer of proof, did you give them any, or even before that, did you give them in discovery the MMPI results? Your Honor, I was not trial counsel for the defendant. I cannot answer that question for you. Regarding the other witnesses, I don't believe they're collateral. They are germane. They are part of the theory of the defense. They support the defense. A matter is collateral if it's not relevant to a material issue of the case. Well, the theory of the defense is material to the case. This is not a side issue. This is not a side issue. It seems there's a lot of hearsay. She told me this. She told me that. Well, Your Honor, it's hearsay. And one was from back in college. It was remote in time. Well, the wife denied that she ever said she had the power of discernment. That's correct. And at least one of these witnesses was going to testify that she had made that claim of having the gift of discernment to her or him. I don't remember now. There are years of emotional abuse. That evidence was about the pattern, the conduct that she exhibited. I assume I'm out of time, but I do want to make sure that I close. Your Honor, Illinois Bar Journal, April of this year, the cover story is about are we making murders, and it's about false confessions. Megan Crane, the co-director for the Center on Wrongful Conviction of Youth, notes in there that, like most people, Illinois judges and prosecutors tend to believe someone is telling the truth when they confess to a crime. Why would someone confess, especially to a serious crime with very serious consequences, for conviction, she asked. And she goes and she says, but minds can be changed if defense attorneys can effectively litigate the issues and lay out in painstaking detail all the reasons why the confession does not make sense, was not corroborated by other evidence, was contaminated by police, and potentially coerced by the police, or in this case, somebody else. Allow for a minute that Michael Bergen's telling the truth. The trial court kept the defense from calling independent witnesses. The trial court denied him a meaningful opportunity to present a complete defense. As a result, he is serving a mandatory sense of natural life. Michael Bergen should not be locked up for life based upon the trial that occurred below, because it is possible that he is the one telling the truth. As Mark Twain said, truth is stranger than fiction, but it is because fiction is obliged to stick to possibilities. Truth isn't. Thank you. Thank you, Mr. Gosselin. Mr. Daly, we'll take the matter under advisory. We'll stand and recess until 115. Can I just say—